**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.R.K., MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1203 WDA 2025 |

Appeal from the Order Dated August 20, 2025
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s): 38 of 2025

BEFORE: BOWES, J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: February 27, 2026**

Appellant, B.K. ("Mother"), appeals from the August 20, 2025 order that involuntarily terminated her parental rights to her biological son, M.R.K. ("Child").[1] Upon review, we affirm.

The orphans' court aptly set forth the genesis of this case, as follows:

[T]his case begins with the birth of Child [i]n April [] 2024. Mother was incarcerated at the time of Child's birth and Child resided with [C.K.,] [m]aternal [g]randmother [("Maternal Grandmother")]. The birth father was unknown. [Westmoreland County Children's Bureau ("WCCB")] took custody of Child on May 2, 2024, when Mother was released from incarceration to Maternal Grandmother's home. Maternal Grandmother had expressed concerns about Mother's mental health and anger issues and felt

_____

[*] Former Justice specially assigned to the Superior Court.

[1] By separate orders dated June 25, 2025, the court involuntarily terminated the parental rights of Child's putative father, G.M. ("Father") and any unknown father. Neither Father nor any unknown father have filed appeals in this case.

> she would not be able to control Mother's behaviors and keep Child safe. Child was adjudicated dependent on May 21, 2024.

Orphans' Court Opinion ("O.C.O."), 10/24/25, at 2-3.

The orphans' court established Child's permanency goal as reunification with Mother. In furtherance thereof, the orphans' court ordered Mother to, *inter alia*: (1) comply with all recommended mental health treatment and take medications as prescribed; (2) complete a parenting assessment and follow any recommendations; (3) obtain and maintain stable and appropriate housing; and (4) comply with all terms and conditions of her probation.

Mother is diagnosed with "unspecified intellectual disability, unspecified personality disorder, unspecified trauma disorder with [post-traumatic stress disorder ("PTSD")] features, and unspecified depressive disorder." O.C.O. at 3; *see also* Notes of Testimony ("N.T."), 8/12/25, at 44, 46. Further, Mother has an extensive criminal history and has pled guilty to, *inter alia*, aggravated cruelty to animals involving torture.[2]

As a result of her crimes, Mother has oscillated between incarceration and unsuccessful participation in community re-entry programs, which have included mental health treatment plans. *See* N.T., 8/12/25, at 15, 21-22. Mother's longest period of not being incarcerated during Child's dependency was from May 2024 to November 2024. *See id.* at 20.

---

[2] *See* 18 Pa.C.S.A. § 5534(a)(1).

The orphans' court held a permanency review hearing on November 4, 2024, and determined that Mother's compliance with her objectives were minimal, and that she had made no progress towards alleviating the circumstances that led to Child's placement.

On April 10, 2025, WCCB filed a petition seeking the involuntary termination of Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b). The orphans' court conducted evidentiary hearings on August 12, 2025 and August 19, 2025, at which time Child was one year old.[3] WCCB presented the testimony of Rebecca Salandro, forensic program specialist for Westmoreland County Behavioral Health Office who was involved in Mother's criminal matters and assisted her attempts to reacclimate in the community; Louis S. Martone, M.D., who conducted two psychiatric evaluations of Mother in connection with her criminal matters; Richelle O'Malley, D.S.W., who was court-appointed to perform a comprehensive

_____

[3] The orphans' court appointed the guardian *ad litem* ("GAL") from the dependency proceeding to the dual role of representing Child's legal and best interests. Due to Child's age, it is clear that he was unable to express his preferred outcome in this case. Thus, the court's appointment of a GAL satisfied Child's right to legal counsel pursuant to 23 Pa.C.S.A. § 2313(a). *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020) ("appellate courts should engage in sua sponte review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with" Section 2313(a)); *see also In re T.S.*, 192 A.3d 1080, 1089-93 (Pa. 2018) (holding, in the case of children who were two and three years old, that an attorney-GAL representing the best interests of the children satisfied their right to legal counsel pursuant to Section 2313(a)).

parenting assessment of Mother; Allison Fullem and Lindsay Felice, employees of The Children's Institute, an agency providing parenting services and supervised visits to Mother;[4] and Karyl Piper, WCCB caseworker. WCCB also presented seven documentary exhibits including reports by Dr. Martone and Dr. O'Malley. Mother did not testify or offer any evidence on her own behalf.

By order entered on August 20, 2025, the orphans' court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), and (b).[5] On September 19, 2025, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On October 24, 2025, the orphans' court filed its Rule 1925(a) opinion.

On appeal, Mother presents the following issues for our review:

1. Whether the trial court erred in finding by clear and convincing evidence that [WCCB] met its burden under 23 Pa.C.S.A. § 2511(a)(2)?

2. Whether the trial [court] erred in finding by clear and convincing evidence that [WCCB] met its burden under 23 Pa.C.S.A. § 2511(a)(5)?

Mother's Brief at 7 (suggested answers omitted).

---

[4] Ms. Fullem worked with Mother from July 2024 to December 2024, while Ms. Felice provided services to her from February 2025 to May 2025. *See* N.T., 8/12/25, at 120-121; *see also* N.T., 8/19/25, at 6.

[5] At the outset of the hearing, WCCB orally amended its petition by withdrawing its allegations pursuant to Section 2511(a)(1). *See* N.T., 8/12/25, at 4. In its Rule 1925(a) opinion, the orphans' court acknowledged that it "erroneously indicated [Section 2511(a)(1)] as grounds for termination on the final [o]rder of [t]ermination." O.C.O., 10/24/25, at 6.

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa.Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for

termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. ***In re T.S.M.***, 620 Pa. 602, 71 A.3d 251, 267 (2013); ***see also*** 23 Pa.C.S.A. § 2511(b). This Court need only agree with the orphans' court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. ***See M.E.***, 283 A.3d at 830 (citing ***In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*)).

Our analysis in this case will focus upon 23 Pa.C.S.A. § 2511(a)(2) and (b),[6] which provide, as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings,

---

[6] Given our disposition with respect to Section 2511(a)(2), we need not review the orphans' court's findings regarding Section 2511(a)(5). ***See M.E.***, 283 A.3d at 830.

income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa.Super. 2021). Grounds for termination pursuant to Section 2511(a)(2), however, "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* (citing *In re Z.P.*, 994 A.2d 1108, 1117 (Pa.Super. 2010)). We emphasize that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *A.H.*, 247 A.3d at 443.

If the orphans' court concludes that adequate grounds for termination exist pursuant to Section 2511(a), the court then turns to Section 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. Our Supreme Court has directed that a Section 2511(b) inquiry must include consideration for the bond between the parent and the child. *In re E.M.*, 533 Pa. 115, 620 A.2d 481,

485 (1993); *see also Interest of K.T.*, 296 A.3d 1085, 1109-10 (Pa. 2023). "However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." *Int. of K.T.*, 296 A.3d at 1109-10 (citing *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008)). In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *T.S.M.*, 71 A.3d at 269. Indeed, the High Court stated:

> Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children.

*Id.* The extent of the "bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010).

Our Supreme Court has recognized that "case law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *K.T.*, 296 A.3d at 1109. Further, orphans' courts "must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *Id.* at 1106.

Instantly, Mother contends that the orphans' court abused its discretion with respect to Section 2511(a)(2) because "she has shown some progress, but her incarcerations have impeded her progress." Mother's Brief at 16.

Specifically, Mother asserts that she attended supervised visits when not incarcerated and demonstrated that she was able to meet the needs of "the simulator doll" used in her parenting program with Ms. Felice. *Id.* at 15. Further, Mother asserts that "she does well" when taking her prescribed medication and that "if she has proper supports in place, she has the potential to do well." *Id.* For the reasons that follow, Mother is not entitled to relief.

The orphans' court made the following factual findings, which the testimonial evidence supports.

> Mother has an extensive mental health history, and according to psychiatric evaluations performed by Dr. Robert Martone, she has the following mental health diagnosis: unspecified intellectual disability, unspecified personality disorder, unspecified trauma disorder with PTSD features and unspecified depressive disorder. Mother's most recent evaluation in June 2025 occurred while she was incarcerated and Dr. Martone stated he was unable to obtain additional information necessary to make a more definitive diagnosis. Prior to her involvement with WCCB, Mother had received extensive mental health services through Westmoreland Casemanagement and Supports, Inc. and Westmoreland County Behavioral Health. Testimony was provided by Rebecca Salandro, a behavioral health professional who has worked with Mother since August 2020 through both agencies, that throughout the time Mother has received services, she has not been consistently compliant. Mother has alternated between periods of incarceration and admittance into various re-entry programs or community residential rehabilitation ("CRR") programs. She has been discharged from the mental health programs due to reincarceration or failure to follow the rules of the program. Ms. Salandro stated that Mother has the highest level of services that can be provided, however a more significant issue is the other individuals in her life that could be supports but are extremely negative and toxic to Mother's mental health.
>
> Ms. Salandro further testified that she had the opportunity to observe Mother with Child on three or four occasions during the summer of 2024 and the interactions between Mother and Child

were "bizarre." She stated Mother seemed intimidated and fearful of Child, particularly if he made noise. Mother appeared very uncomfortable holding Child and would only do so for about 5 to 10 minutes. She also made inappropriate comments about the infant and was more preoccupied with taking pictures and videos of him rather than interacting with him.

Dr. Richelle O'Malley completed a comprehensive parenting assessment for Mother. Some of the initial concerns brought to Dr. O'Malley's attention were an attempt by Mother to sell Child while pregnant, alleging Child was flirting with the nurses in the hospital and that he had pulled her hair as a deliberate act. Mother's IQ was assessed to be a 63. Of additional concern was that Mother had a criminal conviction for animal cruelty. During an in-person session with Mother and Child, Mother was again focused on getting pictures of Child and was not responsive to his cues and needs. Mother referred to Child as "sexy" and was repulsed by the idea of having to change a dirty diaper or having the baby throw up on her.

Dr. O'Malley also administered a Child Abuse Potential Inventory (CAPI) to Mother, on which she scored 204, with a typical score of 167 or higher indicating potential for child abuse. Mother showed very little insight as to why she couldn't have the [C]hild or what would be necessary for successful reunification. Based on the assessment, Dr. O'Malley suggested that a competency evaluation be conducted to determine if Mother was even capable of caring for herself before considering her ability to care for a child.

WCCB had provided parenting services to Mother in an attempt to help her build the skills necessary to care for Child. As part of those services, Mother was provided with a simulator doll to care for at parenting sessions, with the assistance of two parenting coaches. During one session, Mother did score 100% with the doll but was meeting the minimum requirements and leaving the doll in the car seat the remainder of the time. In other sessions, Mother missed requirements such as feeding and rocking, and the doll recorded indications of it being handled roughly and being shaken. Use of the doll was suspended after Mother left it on her front porch.

Mother was also given instruction in basic parenting skills but could not seem to retain the information from one visit to the next and each session essentially started over with instruction. Mother

was unable to make any improvement over the course of parenting instruction.

O.C.O. at 3-5; *see also* N.T., 8/12/25, at 10, 15-22, 24-25, 28-31, 43-46, 74-75, 80, 85-88, 91-92, 112, 120-127; *see also* N.T., 8/19/25, at 10-18.

The orphans' court concluded that the foregoing evidence

clearly establishes that Mother is incapable of parenting Child due to her intellectual disability and mental health diagnosis. Despite several years of attempted mental health services, Mother fails to be compliant with those services and treatments. Additionally, Mother has been provided with parenting instruction but seems unable to retain any information provided or make progress in improving her parenting skills. Concerns exist as to Mother's ability to care for herself, let alone caring for a child. Based on the longstanding history Mother has with these issues, the [c]ourt may infer that the refusal or incapacity will not or cannot be remedied.

O.C.O. at 6-7; *see also* N.T., 8/12/25, at 15-22, 126-127; *see also* N.T., 8/19/25, at 18, 47. We agree.

Indeed, the record evidence demonstrates that Mother's repeated and continued incapacity to parent Child due to her intellectual disability and mental health diagnoses, which have caused Child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being during his entire first year of life. In addition, the conditions and causes of Mother's incapacity to parent Child cannot or will not be remedied. Therefore, we discern no abuse of discretion pursuant to Section 2511(a)(2).

With respect to Section 2511(b), we observe that Mother asserted an error by the trial court in her Rule 1925(b) statement, but she has abandoned the claim in her brief. Specifically, Mother has not included an issue

concerning Section 2511(b) in the statement of questions involved in her brief, and she does not discuss this statutory provision in the argument section. As such, we conclude that Mother has waived any challenge to Section 2511(b). *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa.Super. 2006) (citations omitted) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved. . . ."); *see also* Pa.R.A.P. 2116(a); *In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa.Super. 2017) (reiterating that this Court "will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority.").

Based upon the foregoing, we discern no error or abuse of discretion in the orphans' court's decision to involuntarily terminate Mother's parental rights pursuant to Section 2511(a)(2) and (b). Accordingly, we affirm the order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/27/2026

- 12 -